IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WILLIAM T. MCDONALD, | ) |
| *Plaintiff,* | ) ) ) ) |
| v. | ) Civil Action No. 1:24-cv-110 (PTG/IDD) ) |
| WELLS FARGO BANK, N.A. and PRIMELENDING, A PLAINS CAPITAL COMPANY, | ) ) ) ) ) |
| *Defendants.* | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Dkt. 4) under Federal Rule of Civil Procedure 12(b)(6). In the Complaint, Plaintiff William T. McDonald, proceeding *pro se*, brings eight claims against Defendants Wells Fargo and Primelending, A Plains Capital Company ("Primelending"):[1] (1) fraudulent misrepresentation; (2) breach of contract; (3) fraud in the concealment; (4) civil theft for stolen promissory note; (5) defamation; (6) unjust enrichment; (7) intentional infliction of emotional distress; and (8) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and four criminal statutes (18 U.S.C. §§ 514, 892, 894, 1341). Plaintiff's claims appear to arise out of a loan agreement under which Defendants were to loan Plaintiff money to purchase real property. *See* Dkt. 1-2 ("Compl.") at 3–10. Defendant Wells Fargo argues the Complaint should be dismissed because it fails to state any claim as a matter of law. For the reasons that follow, the Court agrees and will grant the Motion to Dismiss.

---

[1] As of this date, it appears that Plaintiff has never served Defendant Primelending.

**Factual Background**

The Complaint alleges the following facts: Plaintiff entered into a loan agreement with Defendant Primelending, the original lender, to finance Plaintiff's purchase of real property. *See* Compl. ¶ 5. At the time of the transaction, he provided Defendants with a "Note" that Defendants accepted.[2] *Id.* ¶ 7. Defendants refused to lend Plaintiff money or "lawful consideration of any kind, in exchange for the Note." *Id.* ¶ 8. In response to Wells Fargo's "repeated demands for repayment of an alleged loan," Plaintiff "tendered full payment of the alleged debt to alleged noteholder" in June of 2022. *Id.* ¶ 14. Plaintiff asserts that the tender payment instructions are attached to the Complaint as Exhibit B. *Id.* Exhibit B, however, shows that Plaintiff has attempted to assign the debt to the United States Treasury. *See* Dkt. 1-2 at 14–15 ("I accept the obligation on behalf of the United States of America and hereby make assignment of the obligation of the United States Treasury Department on behalf of the United States of America as authorized by statute. You are to present the item remittance coupon to the United States Department [o]f Treasury or any Federal Reserve Bank . . . .").[3]

Plaintiff claims that the Note that he indorsed was altered after this indorsement. *Id.* ¶ 16. Plaintiff requested that Wells Fargo validate the alleged debt against him. *Id.* ¶ 17. In February of 2023, Wells Fargo threatened to foreclose on Plaintiff's home, after which Plaintiff again

---

[2] The Complaint identifies Primelending and Wells Fargo as Defendants in the "Introduction" Section. Compl. ¶ 2. However, the Complaint only names Primelending as the entity with whom Plaintiff entered a loan agreement, then refers to "Defendants." It does not specifically reference Wells Fargo by name in the "Factual Allegations" section until paragraph fourteen. The Complaint then alleges that Wells Fargo made "repeated demands for repayment of an alleged loan." Compl. ¶ 14. Thus, from the Complaint, it is not entirely clear how Wells Fargo became involved in the loan agreement between Plaintiff and Primelending.

[3] These page numbers reference the page numbers indicated in the headers of filing.

requested that Wells Fargo validate the alleged debt. *Id.* ¶ 19. Wells Fargo notified Plaintiff that the property would be placed for sale at a public auction in December 2023. *Id.* ¶ 23.

Plaintiff filed the instant Complaint in the Circuit Court for the County of Loudoun. Dkt. 1 ¶ 1. Wells Fargo removed the action to this Court.[4] Dkt. 1. Wells Fargo subsequently filed the instant motion. Dkt. 4. Plaintiff filed an opposition as well as a surreply to Wells Fargo's reply. Dkts. 7, 8, 9.

## Legal Standard

"A *pro se* complaint should survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim only when a plaintiff has set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 932 (E.D. Va. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "'Factual allegations must be enough to raise a right to relief above the speculative level' and beyond the level that is merely conceivable." *Taylor*, 841 F. Supp. 2d at 932 (quoting *Twombly*, 550 U.S. at 570). "A *pro se* complaint should be liberally construed." *Id.* at 933; *see also Erickson v.*

---

[4] "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Wells Fargo alleges that Primelending was not served at the time Wells Fargo filed its notice of removal. Plaintiff does not contest this allegation. Thus, this case was properly removed. Dkt. 1 ¶ 7. *See Bloom v. Libr. Corp.*, 112 F. Supp. 3d 498, 505–06 (N.D.W. Va. 2015) (concluding that removal was proper because defendant who had not been served at time of removal was not "properly joined and served"). A plaintiff has ninety (90) days from the date of removal to perfect service of process. *Miles v. City of Henderson*, 2022 WL 2374372, at *2 (E.D.N.C. June 30, 2022) (interpreting Federal Rule of Civil Procedure 4(m)).

*Pardus*, 551 U.S. 89, 94 (2007). "However, a court is not required 'to accept as true a legal conclusion couched as a factual allegation,' or a legal conclusion unsupported by factual allegations." *Taylor*, 841 F. Supp. 2d at 933 (first quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986); then citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680-82 (2009)). "Dismissal is appropriate when a complaint contains a description of underlying facts that fails to state a viable claim." *Id.* "Dismissal is also appropriate when a defense of the statute of limitations is apparent on the face of the Complaint." *Id.*

## Analysis

A. **Fraudulent Misrepresentation/Constructive Fraud Claim (Count I) and Fraud in the Concealment Claim (Count III)**

Count One alleges fraudulent misrepresentation and constructive fraud, and Count Three alleges fraud by concealment. In sum, Plaintiff asserts that the defendants misrepresented the nature of the transaction by giving false and misleading ideas of the loan agreement and also concealed the true identity of the loan holder. Compl. ¶¶ 28, 41. Defendant argues that Plaintiff fails to state a claim for either count. The Court agrees.

"To sustain a claim of actual fraud, the plaintiff must prove a false representation, of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." *Doe by & Through Doe v. Baker*, 857 S.E.2d 573, 589 (Va. 2021) (quoting *Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134 (Va. 2001)).

"Constructive fraud requires proof . . . that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of . . . reliance upon the misrepresentation." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (quoting *Mortarino v. Consultant Eng'g Serv.*, 467 S.E.2d 778, 782 (Va. 1996)).

4

For fraud in the concealment, Virginia law provides that "[c]oncealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Doe by & Through Doe*, 857 S.E.2d at 589 (Va. 2021) (quoting *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592 (Va. 1984)). "Proof of fraud by nondisclosure requires 'evidence of a knowing and a deliberate decision not to disclose a material fact.'" *Id.* (quoting *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714 (Va. 2001)). "Before nondisclosure may constitute fraud . . . there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him." *Id.* at 590 (omission in original) (quoting *Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 687 (Minn. Ct. App. 2010)).

"Claims alleging fraud, including constructive fraud, are subject to a heightened pleading requirement." *Tederick v. LoanCare, LLC*, No. 2:22-cv-394, 2024 WL 1223446, at *3 (E.D. Va. Mar. 21, 2024). Federal Rule of Civil Procedure "9(b) requires a party 'alleging fraud or mistake' to 'state with particularity the circumstances constituting fraud or mistake.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). "'[A] plaintiff must allege the identity of the person who made the fraudulent misrepresentation, as well as the time, place, and content of the misrepresentation.'" *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). "Where a party fails to plead fraud with particularity, the party fails to state a claim under Rule 12(b)(6)." *Id.* at *4.

Here, Plaintiff has failed to state plausible claims of constructive fraud/fraudulent misrepresentation or fraud in the concealment because Plaintiff has not pleaded the particular

5

circumstances constituting fraud. For instance, Plaintiff claims that "Defendants' misrepresentations constitute actionable constructive fraud." Compl. ¶ 36. Plaintiff contends that "Defendants misrepresented the nature of the transaction by giving false and misleading ideas of the loan agreement in direct violation of § 59.1-200(14) of the Code of Virginia and 15 U.S.C. § 1692e," Compl. ¶ 28; "acquired Plaintiff's Note by way of fraud and swindle, and that neither Defendant is the holder in due course having exchanged the Note for value," *id.* ¶ 24; "made material misrepresentations to Plaintiff as to the nature of the agreement and the true nature of Defendants' role in the transaction"; and that he "relied upon the false information and suffered harm as a result." *Id.* ¶¶ 32, 34. For his fraud in the concealment claim, Plaintiff merely alleges that "Defendants concealed material facts including who the true lender is." *Id.* ¶ 41. However, Plaintiff has not alleged "the time, place, and content of the misrepresentation[s]." *Tederick*, 2024 WL 1223446, at *3. His allegations are insufficient to meet the heightened pleading standard for fraud claims. Accordingly, the Court will dismiss Count I and Count III.

**B.      Breach of Contract Claim (Count II)**

Next, Plaintiff alleges a claim for breach of contract, asserting that "Defendants breached the loan agreement by failing to lend any money and provide lawful consideration or anything of value" as provided by the loan agreement. Compl. ¶ 38.

"The elements of a breach of contract claim are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). However, the Complaint fails to identify any contractual obligation that was breached.

6

*See* Dkt. 1-2 at 4–8.[5] The Complaint is void of any facts that assert a claim to relief that is plausible on its face. Thus, this count will be dismissed.

C.     **Civil Theft Claim (Count IV)**

Plaintiff brings a claim of "civil theft for stolen promissory note" against Defendants, alleging that "Defendants did not return Plaintiff's original promissory note[,] which is Plaintiff's property . . . ." *Id.* at 6, ¶45.

"Virginia law does not recognize a cause of action for 'civil theft'[ ].'" *Pitts v. Glasser*, No. 2:11-cv-337, 2011 WL 10583561, at *1 (E.D. Va. Dec. 23, 2011), *aff'd*, 472 F. App'x 209 (4th Cir. 2012) (finding that claims for civil theft "do not state a claim upon which relief could be granted[] and [thus] should be dismissed"). Thus, this claim will be dismissed as a matter of law.

D.     **Defamation Claim (Count V)**

Plaintiff bases his defamation claim on the fact that "Wells Fargo[,] through its counsel and substitute trustee have twice advertised, and do currently advertise, Plaintiff's home for auction despite their awareness of serious defects in their claim of [an] enforceable security interest in the property." Compl. ¶ 47. Plaintiff alleges that, "[w]hether . . . Wells Fargo's actions in this regard are negligent or malicious, Plaintiff has suffered significant reputational harm as a result of these slanderous actions." *Id.* ¶48.

"The elements of defamation are '(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013) (quoting *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005)). "To be actionable, the statement must be both false and defamatory." *Id.* (quoting *Jordan*, 612 S.E.2d at 206). A statement is "defamatory" if it "tend[s] so to harm the reputation of another as to lower him in the estimation of the community

---

[5] These page numbers reference the page numbers indicated in the headers of filing.

or to deter third persons from associating or dealing with him." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (quoting Restatement (Second) of Torts § 559). "[D]efamatory words are those that 'make the plaintiff appear odious, infamous, or ridiculous.'" *Id.* (quoting *McBride v. Merrell Dow & Pharms., Inc.*, 540 F. Supp. 1252, 1254 (D.D.C. 1982), *rev'd in part on other grounds*, 717 F.2d 1460 (D.C. Cir. 1983)). "A plaintiff must sufficiently allege that the statement tends to harm his reputation 'as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Blagogee v. Equity Trs., LLC*, No. 1:10-cv-13, 2010 WL 2933963, at *6 (E.D. Va. July 26, 2010) (quoting *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009)).

Here, Plaintiff's allegation that publication of the foreclosure notice has caused him "significant reputational harm" is not enough to render the foreclosure notice an actionable defamatory statement. *See Blagogee v. Equity Trustees, LLC*, No. 1:10-cv-13, 2010 WL 2933963, at *6 (E.D. Va. July 26, 2010) (finding that the "foreclosure sale notice [wa]s not an actionable statement for defamation purposes" because plaintiffs' statements that "at times, they felt socially awkward or odious does not, without more, suggest the reputational harm necessary to make [the foreclosure notice an] actionable" statement). Accordingly, Plaintiff has failed to sufficiently plead a claim of defamation. Thus, the Court will dismiss this claim.

E.   **Unjust Enrichment Claim (Count VI)**

Under Virginia law, the elements of an unjust enrichment claim are: "(1) '[plaintiff] conferred a benefit on [defendant]; (2) [defendant] knew of the benefit and should reasonably have expected to repay [plaintiff]; and (3) [defendant] accepted or retained the benefit without paying for its value.'" *T. Musgrove Constr. Co., Inc. v. Young*, 840 S.E.2d 337, 341 (Va. 2020) (alterations in original) (quoting *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008)).

8

Here, in support of his unjust enrichment claim, Plaintiff asserts that "Defendants received a benefit. This benefit is a direct result of the Plaintiff's loss." Compl. ¶ 50. He further alleges that "the Defendants acquired Plaintiff's Note by way of fraud and swindle, and that neither Defendant is the holder in due course having exchanged the Note for value." *Id.* ¶ 24. Plaintiff further contends "that in the absence of the original Note, the Deed of Trust is null and void based on the Supreme Court's ruling (1872, *Carpenter v. Longan*, 83 US. 271, 274) that the mortgage follows the Note, the two are inseparable, and an assignment of the former without the latter nullifies it." *Id.*

Plaintiff appears to argue that Defendants here were unjustly enriched because they collected loan repayments from him even though they are not holders in due course of the Note under which Plaintiff received the loan. Thus, Plaintiff argues that he has conferred a benefit on Defendants, though they did not pay Plaintiff for its value.

The Court, however, is not bound to accept Plaintiff's conclusory allegations. Here, the Complaint does not contain any factual allegations that plausibly support a claim that Defendants are not holders in due course of the Note. For the same reason, Plaintiff has not plausibly alleged that he conferred a benefit on Defendants and that they should have reasonably expected to repay Plaintiff. Accordingly, Plaintiff has failed to state a claim for unjust enrichment, and the Court will dismiss this claim.

F.   **Intentional Infliction of Emotional Distress (Count VII)**

Under Virginia law, "[t]o adequately plead a claim for intentional infliction of emotional distress," Plaintiff must assert that "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe."

*Viers v. Baker*, 841 S.E.2d 857, 863 (Va. 2020) (quoting *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007)). As to the second element, "the behavior alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Almy*, 639 S.E.2d at 187).

Here, "Plaintiff asserts that Defendants' reckless and outrageous behavior in attempting to acquire a security interest in Plaintiff's home without due consideration and collect a fraudulent debt under threat of foreclosure caused severe emotional distress and adversely affected Plaintiff's mental health." Compl. ¶ 53. Plaintiff also contends that "Defendant WELLS FARGO and its agents' efforts to advance a foreclosure auction when its alleged security interest is being challenged in litigation and in clear dispute is further evidence of intentional infliction of mental distress." Compl. ¶ 54.

The conduct that Plaintiff alleges constitutes intentional infliction of emotional distress "does not meet the high bar Virginia sets for outrageous and intolerable behavior." *See Guo v. Xia*, 2018 WL 11509765 at *2 (E.D. Va. 2018) (dismissing intentional infliction of emotional distress claim); *see also Levin v. Am. Document Servs.*, LLC, 828 F. App'x 788, 793 (2d Cir. 2020) (concluding that defendants' alleged conspiracy to fraudulently assign plaintiff's debt "was not 'extreme' or 'outrageous'" such that defendants were liable for intentional infliction of emotional distress). Moreover, Plaintiff's alleged injury—the distress resulting from the threat of foreclosure—is also not severe enough such that Plaintiff can recover for intentional infliction of emotional distress. 828 F. App'x at 793 (stating that "fear of a pending foreclosure—is likely not sufficiently severe to trigger liability [for intentional infliction of emotional distress]").

Thus, the Court finds that Plaintiff has failed to state a claim for intentional infliction of emotional distress and dismisses this claim.

## G. Truth in Lending Act ("TILA") Claim (Count VIII)

Plaintiff alleges that "Defendants' failure to provide accurate and complete disclosures regarding the terms and conditions of the loan violates 15 U.S.C. § 1638 and other provisions of TILA . . . ." Compl. ¶ 56. He asserts that "[a]s a result of Defendants' TILA violation, Plaintiff is entitled to rescind the loan, recover statutory damages, actual damages, and attorneys' fees and costs under 15 U.S.C. § 1635, 15 U.S.C. § 1640(a), and other provisions of TILA." *Id.* ¶ 57. He further contends that "Defendants' conduct was intentional, reckless, or negligent" and "Defendants' actions have caused Plaintiff to suffer actual damages," "in violation of 15 U.S.C. §1640(a)." *Id.* ¶¶ 58–59.

"Among other things, TILA 'requires lenders "clearly and conspicuously" to make a number of disclosures to borrowers, including the disclosure of the borrowers' right to rescind a consumer credit transaction.'" *Wilson v. Navy Fed. Credit Union*, 2024 WL 520090, at *4 (D. Md. Feb. 9, 2024) (quoting *Watkins v. SunTrust Mortgage, Inc.*, 663 F.3d 232, 234 (4th Cir. 2011)). Under 15 U.S.C. § 1635(a) of TILA:

> [I]n the case of *any consumer credit transaction* (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, *the obligor shall have the right to rescind the transaction* until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so.

11

(Emphases added). "[N]o 'consumer credit transaction' exists for which the right to rescind can be exercised until that transaction has been consummated, 'or put another way, "until credit is in fact extended."'" *Weintraub v. Quicken Loans, Inc*, 594 F.3d 270, 275 (4th Cir. 2010) (quoting *Nigh v. Koons Buick Pontiac GMC, Inc.*, 319 F.3d 119, 123 (4th Cir. 2003), *rev'd on other grounds*, 543 U.S. 50 (2004)) (interpreting 15 U.S.C. §§ 1635, 1638).

Under 15 U.S.C. § 1640(e), an "action under [§ 1640] may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." The "date of the occurrence of the violation is the date on which the borrower accepts the creditor's extension of credit." *Brown v. Ocwen Loan Servicing, LLC*, 2015 WL 5008763, at *7 (D. Md. Aug. 20, 2015) (quoting *Moseley v. Countrywide Home Loans, Inc.*, 2010 WL 4484566 at *2 (E.D.N.C. Oct. 26, 2010)) (interpreting 15 U.S.C. § 1640(e)).

Here, Plaintiff alleges that he is "entitled to rescind the loan [and] recover statutory damages, actual damages, and attorneys' fees and costs under 15 U.S.C. § 1635, 15 U.S.C. § 1640(a), and other provisions of TILA." Compl. ¶ 57. The loan agreement was entered in 2012. Compl. ¶ 5. Plaintiff filed suit in 2023. Thus, his claims under TILA are barred by the statute of limitations. 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."); *Cordon v. Aurora Loan Servs.*, LLC, No. 1:10-cv-645, 2010 WL 3418214, at *1, *6 (E.D. Va. Aug. 26, 2010) (finding that "the alleged violations that formed the basis of the Plaintiff's TILA claim occurred either at the time of or before the [loan consummation]," and the applicable statute of limitations barred a TILA claim brought more than one year after the date of the loan consummation); 15 U.S.C. § 1635(a) (stating that the obligor has "the right to rescind the transaction until midnight of the third business day following the

consummation of the transaction or the delivery of the information and rescission forms required under this section").[6] Accordingly, this count is also dismissed.

### Dismissal with Prejudice

Whether a dismissal under FRCP 12(b)(6) is with or without prejudice is a matter left to the trial court's discretion. *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018). The Court finds that further amendment of the Counts IV, V, VII and VIII of the Complaint "would be futile in light of the fundamental deficiencies in [P]laintiff['s] theor[ies]" for each claim and will dismiss these claims with prejudice. *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (affirming district court's dismissal of the complaint with prejudice). The Court will dismiss the remaining counts without prejudice. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 4) is **GRANTED**. Counts IV, V, VII, and VIII are hereby **DISMISSED with prejudice** as to Defendant Wells Fargo. The remaining counts (Counts I, II, III, and VI) are **DISMISSED without prejudice** as to Defendant Wells Fargo; and it is further

**ORDERED** that, as it appears to the Court that no service of the complaint on Primelending has been effected within 90 days of removal, **within fourteen (14) days, Plaintiff show cause,** if any, why this civil action should not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

Entered this 27th day of September, 2024.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge

---

[6] In addition, Plaintiff contends that "Defendants' actions related to this alleged contract should also be investigated as to potential violations of the following criminal codes[:]18 U.S. Code § 514," "18 U.S. Code § 892," "18 U.S. Code § 894," and "18 U.S. Code § 1341." Compl. ¶ 60. "A private person may not initiate a criminal action in the federal courts." *See, e.g.*, *Ras-Saleh: 7 Tafari: El v. Glasser and Glasser PLC*, 434 F. App'x 236, 236 (4th Cir. 2011) (per curiam).